**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Midwest Operating Engineers Retirement Enhancement Fund; Local 150 I.U.O.E. Vacation Savings Plan; Operating Engineers Local 150 Apprenticeship Fund; Construction Industry Research and Service Trust Fund; and International Union of Operating Engineers, Local 150, AFL-CIO, <br><br>  Plaintiffs, <br><br>  v. <br><br> Willman Construction, Inc., and Mark Willman, Individually. <br><br>  Defendants. | CIVIL ACTION <br><br> NO. 21-CV-1932 |

## **COMPLAINT**

Plaintiffs, Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Midwest Operating Engineers Retirement Enhancement Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 I.U.O.E. Vacation Savings Plan (collectively "the Funds"); Construction Industry Research and Service Trust Fund ("CRF"); and International Union of Operating Engineers, Local 150, AFL-CIO (hereafter, "Local 150" or "the Union"), bring this action to collect delinquent fringe benefit contributions and administrative dues from Defendant, Willman Construction, Inc., an administratively dissolved Iowa Corporation; and to enforce a payment plan breached by Defendant Mark Willman who personally guaranteed payment on behalf of the corporate Defendant.

# COUNT I

## SUIT AGAINST WILLMAN CONSTRUCTION, INC. FOR DELINQUENT CONTRIBUTIONS

1. The Union is an "employee organization" under the Employee Retirement Income Security Act of 1974, and as amended ("ERISA"), 29 U.S.C. § 1002(4); and a "labor organization" under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(5).

2. Defendant Willman Construction, Inc. ("WCI") is an "Employer" within the meaning of ERISA, 29 U.S.C. § 1002(5) and an "Employer" within the meaning of the LMRA, 29 U.S.C. § 152(2) engaged in the construction industry. According to the Iowa Secretary of State, it was administratively dissolved on October 13, 2020 and is currently an "inactive" Iowa corporation with its principal office in Davenport, Illinois.

3. WCI identified Mark J. Willman as Registered Agent with the Iowa Secretary of State (Exhibit A). WCI was also registered as a Foreign corporation with the Illinois Secretary of State, but that registration was revoked as of February 12, 2021 (Exhibit B). WCI identified Mark Willman as President.

4. WCI filed for Chapter 11 bankruptcy in the Southern District of Iowa (Davenport) (Case No. 16-00774-lmj11) on April 15, 2016 and subsequently continued to operate and perform work. The bankruptcy was terminated February 12, 2018 and WCI continued to operate and perform work.

5. On October 10, 1997, WCI through its President Mark Willman, signed a Memorandum of Agreement (attached as Exhibit C) with the Union that adopted the terms of a collective bargaining agreement between the Union and Quad City Builders Association, known as the Building Construction Agreement, referred hereinafter as "CBA" (excerpts attached as Exhibit D).

6. Under the terms of the CBA, WCI is obligated to make contributions to the Midwest Operating Engineers Health and Welfare Fund, the Midwest Operating Engineers Pension Trust Fund, the Midwest Operating Engineers Retirement Enhancement Fund, the Local 150 Apprenticeship Fund, the Local 150 I.U.O.E. Vacation Savings Plan ("the Funds"), and the Construction Industry Research and Service Fund ("CRF").

7. The CBA and the Agreements and Declarations of Trust incorporated therein require WCI to make fringe benefit contributions to the applicable Plaintiff fringe benefit funds. The Funds are "employee benefit plans" and/or "plans" within the meaning of ERISA, 29 U.S.C. § 1002(3).

8. The CBA and Trust Agreements specifically require WCI to:

(a) Submit a monthly report stating the names and number of hours worked by every person on whose behalf contributions are required and accompany these reports with payment of contributions based on an hourly rate identified in the CBA;

(b) Compensate the applicable fringe benefit funds for the additional administrative costs and burdens imposed by its delinquency through payment of liquidated damages in the amount of ten percent of untimely contributions, or twenty percent of such contributions should the applicable fringe benefit funds be required to file suit;

(c) Pay interest to compensate the applicable fringe benefit funds for the loss of investment income;

(d) Make its payroll books and records available to the applicable fringe benefit funds for the purpose of an audit to verify the accuracy of past reporting, and pay any and all costs incurred by the applicable fringe benefit funds in pursuit of an audit where a delinquency in the reporting or submission of contributions is identified;

(e) Pay the applicable fringe benefit funds' reasonable attorneys' fees and costs incurred in the prosecution of any action to collect outstanding reports, delinquent contributions, or compliance with an audit request; and

(f) Furnish to the applicable fringe benefit funds a bond in an amount acceptable to the Funds.

9. The CBA also requires WCI to make contributions to CRF. CRF is a "labor management committee" as that term is defined under Section 302(c)(9) of the LMRA, 29 U.S.C. § 186 (c)(9). The CBA places the same obligations on WCI with respect to CRF as it does the Funds.

10. The CBA further requires WCI to deduct administrative dues from employees' wages and remit those dues to the Union on a monthly basis utilizing a form remittance report. Where WCI does not do so, the Union is entitled to liquidated damages, attorneys' fees and any other cost of collection.

11. WCI has become delinquent in the submission of its contributions due the applicable fringe benefit funds and CRF, and administrative dues to the Union. As a result of this delinquency, it owes the applicable fringe benefit funds and CRF contributions, liquidated damages, interest, liquidated damages, attorneys' fees and any other cost of collection.

## Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to ERISA, 29 U.S.C. §§ 1132, 1145 and 28 U.S.C. § 1331, because ERISA is a federal statute.

13. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA because the Funds are administered in Cook County, Illinois.

## Allegations of Violations

14. ERISA states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

15. Where an employer fails to submit contribution reports and contributions timely, ERISA permits the Funds to file suit under ERISA to collect the fringe benefit contributions, liquidated damages, interest, attorneys' fees and costs. ERISA also permits the Funds to seek an injunction that requires submission of outstanding reports so that the Funds may determine whether additional sums are due to the Funds. Alternatively, the Funds may seek an audit to establish whether such sums are due, and/or estimate the amounts due.

16. WCI has violated ERISA and breached the CBA and the Trust Agreements because it has failed to timely submit its contributions to the applicable fringe benefit funds and refused to pay liquidated damages and interest that has accrued.

17. Upon careful review of all records maintained by the Funds, and after application of any and all partial payments made by WCI, there are post-bankruptcy amounts totaling $30,641.90 known to be due the Funds from WCI, before the assessment of fees and costs, and subject to the possibility that additional contributions, liquidated damages, and interest will become due while this lawsuit is pending.

WHEREFORE, the Funds respectfully request that the Court:

A. Enter judgment in favor of the Funds and against WCI for all unpaid contributions as identified in WCI's contribution reports;

B. Enjoin WCI to perform specifically its obligations to the Funds, including submission of the required reports and contributions due thereon to the Funds in a timely fashion as required by the plans and by ERISA;

C. Enjoin WCI at the Funds' option to submit to an audit of its payroll books and records in order to determine whether WCI owes additional sums to the Funds, and pay the costs of such an audit; or alternatively at the Funds' option require WCI to pay any contributions reasonably estimated to be due by the Funds for the period when WCI failed and refused to timely submit contribution reports;

D. Enter judgment against WCI and in favor of the Funds for liquidated damages, interest, attorneys' fees and costs associated with all delinquent contributions;

E. Provide the Funds with such further relief as may be deemed just and equitable by the Court, all at WCI's cost.

## COUNT II

### SUIT TO COLLECT CRF CONTRIBUTIONS FROM WILLMAN CONSTRUCTION, INC.

1-9. CRF re-alleges and incorporates herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

### Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185 and 28 U.S.C. § 1331.

11. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because this Court has jurisdiction over the parties, and CRF's principal office is located within the geographic jurisdiction of this Court.

### Allegations of Violations

12. WCI has failed to make timely payment of all contributions acknowledged to be due according to WCI's own contribution reports and the collective bargaining agreement, and WCI has failed to pay interest and liquidated damages required by the CBA. Accordingly, WCI is in breach of its obligations to the CRF under the CBA.

13. That upon careful review of all records maintained by CRF, and after application of any and all partial payments made by WCI, there are post-bankruptcy amounts totaling $811.58 known to be due to CRF from WCI subject to the possibility that additional contributions and liquidated damages will become due while this lawsuit is pending.

WHEREFORE, CRF respectfully requests that the Court:

A. Order WCI to submit any delinquent monthly contribution reports;

B. Enter judgment in favor of CRF and against WCI for all unpaid contributions, liquidated damages, interest, CRF's reasonable attorneys' fees and costs;

C. Enjoin WCI to perform specifically its obligations to CRF including timely submission of reports and contributions as required by the plans and the CBA;

D. Award CRF such further relief as may be deemed just and equitable by the Court, all at WCI's cost.

## COUNT III

### SUIT TO COLLECT UNION DUES FROM WILLMAN CONSTRUCTION, INC.

1-9. The Union re-alleges and incorporates herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

### Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185.

11. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties and the Union's principal office is located within the geographic jurisdiction of this Court.

### Allegations of Violations

12. WCI has failed to make timely payment of all administrative dues acknowledged to be due according to WCI's own reports and the collective bargaining agreement. WCI is required to pay liquidated damages by the CBA. Accordingly, WCI is in breach of its obligations to the Union under the CBA.

7

13. That upon careful review of all records maintained by the Union, and after application of any and all partial payments made by WCI, there are post-bankruptcy amounts totaling $417.74 known to be due to the Union from WCI before the assessment of fees and costs subject to the possibility that additional contributions and liquidated damages will become due while this lawsuit is pending.

WHEREFORE, the Union respectfully requests that the Court:

A. Order WCI to submit all delinquent monthly dues reports;

B. Enter judgment in favor of the Union and against WCI for all unpaid dues, liquidated damages, and the Union's reasonable attorneys' fees and costs, including any amounts estimated to be due because WCI failed to submit all dues reports required by the CBA;

C. Enjoin WCI to perform specifically its obligations to the Union including timely submission of reports and contributions as required by the plans and the CBA;

D. Award the Union such further relief as may be deemed just and equitable by the Court, all at WCI's cost.

## COUNT IV

### SUIT AGINST WILLMAN CONSTRUCTION, INC. FOR BREACH OF PAYMENT PLAN

1-9. The Funds, CRF and the Union re-allege and incorporate herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

10. As a result of WCI's delinquency, WCI owed the Funds and CRF contributions, liquidated damages, and interest, and dues contributions to the Union. In order to forestall the filing of a lawsuit, WCI through its president Mark Willman, executed a Payment Plan Agreement ("Payment Plan") (Exhibit E). The parties executed the Payment Plan in Cook County, Illinois.

11. In that Payment Plan, WCI agreed to make installment payments of delinquent sums that it owed the Funds, the Union, and CRF. WCI and Mark Willman further agreed to

submit its forthcoming monthly reports, contributions, and dues payments timely. Mark Willman agreed to accept personal liability for the amounts owed by WCI. In that Payment Plan, WCI and Mark Willman consented to the entry of judgment against each of them in the event of breach of the Payment Plan.

### Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, because the Payment Plan is an extension and modification of the CBA. Additionally, WCI executed the Payment Plan in Illinois and thus WCI availed itself of the law of State of Illinois. Furthermore, WCI stipulated to the jurisdiction of this Court in the Payment Plan (Exhibit E).

13. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties.

### Allegations of Violations

14. WCI has breached its obligations under the Payment Plan because it has failed to make its required payments timely, and failed to submit its monthly reports, contributions, and dues timely. WCI has failed to pay liquidated damages and interest that has accrued. As a result of such breaches, the Funds, the Union, and CRF are entitled to the entry of judgment against WCI for all amounts identified as due in the Payment Plan, and all sums that became due following the execution of the Payment Plan.

15. That upon careful review of all records maintained by the Funds, there is a total of $59,126.73 due the Funds, the Union, and CRF from WCI under the Payment Plan, before the assessment of attorneys' fees and costs subject to the possibility that additional contributions, dues, interest, and liquidated damages would become due while this lawsuit is pending, and/or the

possibility that WCI owes additional contributions and dues not yet identified by WCI in its delinquent reports.

  WHEREFORE, the Funds, the Union, and CRF respectfully request that Court:

A. Enter judgment in favor of the Funds, the Union, and CRF and against Willman Concrete, Inc. for all amounts still due under the Payment Plan;

B. Enter judgment in favor of the Funds, the Union, and CRF for all amounts that have become due following the execution of the Payment Plan;

C. Grant to the Funds, the Union, and CRF such further relief as may be deemed just and equitable by the Court, all at WCI's cost.

### COUNT V

### SUIT AGAINST MARK WILLMAN, INDIVIDUALLY, FOR BREACH OF PAYMENT PLAN

  1-9. The Funds, CRF and the Union re-allege and incorporate herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

  10. As a result of WCI's delinquency, WCI owed the Funds and CRF contributions, liquidated damages, and interest, and dues contributions to the Union. In order to forestall the filing of a lawsuit, WCI, through its President Mark Willman, executed a Payment Plan Agreement (Exhibit E). The parties executed the Payment Plan in Cook County, Illinois.

  11. In that Payment Plan, WCI though Mark Willman agreed to make installment payments of delinquent sums that they owed the Funds, the Union, and CRF. Mark Willman further agreed to submit WCI's forthcoming monthly reports, contributions, and dues payments timely. Further, Mark Willman agreed to accept personal liability for the amounts owed by WCI. In that Payment Plan, Mark Willman consented to the entry of judgment against WCI, and himself, in the event of breach of the Payment Plan.

**Jurisdiction and Venue**

12. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, because the Payment Plan is an extension and modification of the CBA. Additionally, Mark Willman executed the Payment Plan in Illinois and thus Mark Willman availed himself of the law of State of Illinois. Furthermore, Mark Willman stipulated to the jurisdiction of this Court in the Payment Plan (Exhibit E).

13. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties.

**Allegations of Violations**

14. Mark Willman has breached his obligations under the Payment Plan because he has failed to make the required payments timely. Mark Willman has failed to pay liquidated damages and interest that has accrued. As a result of such breaches, the Funds, the Union, and CRF are entitled to the entry of judgment against Mark Willman for all amounts identified as due in the Payment Plan, and all sums that became due following the execution of the Payment Plan.

15. That upon careful review of all records maintained by the Funds CRF and the Union, there is a total of $59,126.73 due the Funds, the Union, and CRF from Mark Willman under the Payment Plan and that became due following the execution of the Payment Plan, before the assessment of attorney's fees and costs subject to the possibility that additional contributions, dues, interest, and liquidated damages would become due while this lawsuit is pending, and/or the possibility that Mark Willman owes additional contributions and dues not yet identified by the Company in its delinquent reports.

WHEREFORE, the Funds, the Union, and CRF respectfully request that the Court:

A. Enter judgment in favor of the Funds, the Union, and CRF and against Mark Willman for all amounts still due under the Payment Plan;

B. Enter judgment in favor of the Funds, the Union, and CRF and against Mark Willman for all amounts that have become due following the execution of the Payment Plan;

C. Grant to the Funds, the Union, and CRF such further relief as may be deemed just and equitable by the Court, all at Mark Willman' cost.

Dated: April 12, 2021

Respectfully submitted,

By: s/ Brad H. Russell
One of the Attorneys for the Plaintiffs

Attorneys for the Funds and CRF:

Dale D. Pierson *(dpierson@local150.org)*
Brad H. Russell *(brussell@local150.org)*
Institute for Worker Welfare, P.C.
6140 Joliet Road
Countryside, IL 60525
Ph: (708) 579-6669
Fx: (708) 588-1647

Attorneys for Local 150:

Dale D. Pierson *(dpierson@local150.org)*
Brad H. Russell *(brussell@local150.org)*
Local 150 Legal Dept.
6140 Joliet Road
Countryside, IL 60525
Ph: (708) 579-6663
Fx: (708) 588-1647